UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE
2004 JUN 23  P 4: 59
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.  03-10403-PBS |
| ) | |
| ANTHONY SNOW ) | |

## DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM

Defendant Anthony Snow submits this memorandum in support of his motion for downward departure from the applicable guideline range and to aid the Court in sentencing.  Snow moves for downward departure under U.S.S.G § 5K2.13 (diminished capacity) and § 5H1.3 (extraordinary mental and emotional condition). Snow also disputes the Guideline calculations relating to certain enhancements proposed by the Government and included in the pre-sentence report calculation.

### SENTENCING GUIDELINE ISSUES

The Defendant has objected to Probation's initial guideline calculations and continues to maintain that specific enhancements should not apply.

Specifically, the Government asserts there are two

enhancements that should apply to the defendant's guideline calculations:

>1) A four-point enhancement for role as an Organizer or Leader in this offense.
>
>2) A two-point enhancement for obstruction of justice.

### The Defendant was not a leader or organizer

The Government contends that Mr. Snow either supervised, organized or recruited individuals to participate in the various accident claims charged. It is the defendant's position that he participated in these claims with others but played no larger role than anyone else. Mr. Snow would make less than other participants in various instances because his role was less. Snow was involved with his brother's vehicle business and had access to a variety of automobiles. Snow's involvement was based on his ability to provide a car or rent a truck to use in these accidents. Others involved would at times rent trucks or automobiles using their own false identifications. There are instances in which claims were made in which Snow had no involvement at all, as objected to by the defendant in the pre-sentence report. Snow's post office box was also used by Howard Odom who is mentioned in many of the claims as an accomplice. Howard Odom would use this post office box for false claims in which Snow was not involved.

The Government has further asserted that the defendant was recorded attempting to recruit Monique Andrade into the organization. This recording has never been divulged to the defense but has been mentioned as existing. The Defendant would request that Monique Andrade be produced to testify it the Court was to consider this recording as evidence against him. Monique Andrade is someone who has been involved in staging accidents long before the defendant became involved. The Defendant believes she is wholly untrustworthy and believes only through the ability to confront Mrs. Andrade as to her prior involvement and intent in cooperating would the Court be able to put such a recording truly in context. The Defendant recalls meeting with Monique Andrade and recalls bolstering about profits that could be made if she were to assist in making false claims. Mr. Snow should not receive a four level enhancement in this matter.

### The Defendant did not obstruct justice

The Defendant had attempted to have John Murray falsely arrested for drug and gun charges in March of 2001. This was not done with the intent to impede the investigation of this case. Mr. Snow's motivation was due to his own arrest and imprisonment for possession of a stolen vehicle, a vehicle John Murray brought over and requested that he allow him to store it at his home. Mr. Snow did not know the vehicle was stolen. He was arrested and

prosecuted for this offense and his parole was revoked. Mr.
Murray threatened that if he were to reveal he was responsible he
would hurt Mr. Snow and his family. Mr. Murray threatened Snow
with a gun related to this. It was for these reasons that Mr.
Snow attempted to have Mr. Murray arrested. The Defendant
believes this does not justify an enhancement for obstruction of
justice under U.S.S.G § 3C1.1: "If (A) the defendant willfully
obstructed or impeded, or attempted to obstruct or impede, the
administration of justice during the course of the investigation,
prosecution, or sentencing of the instant offense of conviction,
and (B) the obstructive conduct related to (i) the defendant's
offense of conviction and any relevant conduct; or (ii) a closely
related offense". His attempting to have Mr. Murray arrested was
without any knowledge that Mr. Murray was cooperating with
authorities. Furthermore, it is not clear whether Mr. Murray was
even cooperating in March 2001 when this occurred. Mr. Snow's
actions were not done with the intent to impede any type of
investigation, he was not even aware an investigation was taking
place as shown through his continuing criminal activity. Mr.
Snow did not obstruct justice in this case and should not receive
an enhancement.

## STATEMENT OF FACTS

From his early childhood Snow has suffered from physical and mental abuse and learning disabilities which have caused him to cope with untreated mental disorders and left him with a limited ability to read or write. His Father, Adam Snow Sr., was the source of this abuse; he also introduced him to cocaine and made him sell drugs as an adolescent. PSR ¶ 112; see also Ex. A, Psychological Evaluation by Roger Gray, M.D. (hereinafter "Gray Report"). At the age of nine, Snow witnessed his younger brother Bernard, age eight, stop breathing and die while they were playing together. He was seriously traumatized by this and blames himself for his brother's death. See Gray Report p.2-3. Snow was very hesitant to discuss specific abuse by his Father, he states his Father "yelled at him a great deal" and finally admitted that after his brother's death the physical and mental abuse began. The physical and mental abuse and his learning disabilities are further documented in a psychological evaluation performed on September 10, 2001, by Jasper Lawson, Ph.D. See Ex. B (hereinafter "Lawson Report") as well as in a clinical assessment on March 20, 2001, from the psychiatry department of the Deaconess Waltham Hospital, see Ex. C (hereinafter "Waltham Report"). The Lawson Report, Ex. B, notes that Snow's IQ is 79 and that he is in the low average cognitive range with longstanding learning disabilities. Snow also suffers from

auditory hallucinations and suicidal tendencies at times. See Gray Report, Ex. A, p.3-4.  Snow attempted to get by in special education classes until the eleventh grade when his mother removed him from school in an attempt to establish a treatment plan for him at Mattapan State Hospital which never came to fruition. See Gray Report p.3.

Dr. Gray concludes that Snow's "several mental impairments" since childhood "magnify each other";  "I believe the combination of low self-esteem, guilt, psychosis, severe abuse, a disturbed relationship with his father, and a learning disability have all contributed to the development of depression, PSTD(Post Traumatic Stress Disorder), and substance abuse".  See Gray Report, Ex A, p.4.  Dr. Gray concludes that these disorders have resulted in a significantly reduced mental capacity which resulted in marked impairments and inability to control his behavior related to the present offense.  See Gray Report, Ex A, p.5.

The instant offense involved Snow taking part with others in renting trucks and involving them in staged accidents with different vehicles to collect insurance claims.  Since his early childhood Snow has suffered not only from intellectual deficits already discussed but also psychiatric symptoms including, as described in the formal assessment by Dr. Gray, as " a desire to please others, guilt, shame, passivity, dependence on others and a desire to 'do the right thing'", Id., p.3.

Overall, Snow has serious cognitive problems, can barely read or write and is unable to comprehend complex concepts. His witnessing his brother's death at an early age triggered feelings of guilt and was the beginning of the physical and mental abuse by his father. Because of his cognitive impairments and practical illiteracy he fails to see options and has little ability to make free choices. See Gray Report, Ex A. Although he knew his behavior was wrong in relation to the instant offense he was unable to anticipate the consequences or stop his behavior. Snow can, however, benefit from group and individual psychotherapy and educational assistance to improve his literacy and life skills and treat his mental disorders.

## ARGUMENT

I. THE DEFENDANT COMMITTED THE OFFENSE WHILE SUFFERING FROM A SIGNIFICANTLY REDUCED MENTAL CAPACITY ALLOWING THIS COURT TO DEPART DOWNWARD.

United States Sentencing Guidelines § 5K2.13 provides that a "sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity." Significantly reduced mental capacity is further defined as "significantly impaired ability to (A) understand the wrongfulness of the behavior compromising the offense or to exercise the power of reason; or

(B) control behavior that the defendant knows is wrongful."
U.S.S.G. § 5K2.13, comment. (n.1).

The defendant's diminished capacity does not have to be the
sole reason or cause of the offense, but need only to contribute
to the commission of the offense. United States v. Lauzon, 938
F.2d 326, 331 (1st Cir. 1991). This is an encouraged ground for
departure and a sentencing court is authorized to depart if the
applicable guideline does not already take it into account. Koon
v. United States, 116 S. Ct. 2035, 2045 (1996); United States v.
McBroom, 124 F. 3d 533, 538 (3rd Cir. 1997).

Snow's Post Traumatic Stress Disorder (PTSD) and psychiatric
impairments qualify him for a diminished capacity departure. His
psychiatric disorders "resulted in a significantly reduced mental
capacity, which contributed substantially to the commission of
the offenses he has admitted. Although he understood that his
behavior was wrong, his mental illnesses resulted in marked
impairments and an inability to control his behavior." See Gray
Report, Ex A p.5.

II   THE DEFENDANT COMMITTED THE OFFENSE WHILE SUFFERING FROM AN
     EXTRAORDINARY MENTAL AND EMOTIONAL CONDITION ALLOWING THIS
     COURT TO DEPART DOWNWARD.

Snow's psychological impairments and cognitive capacity have
been impaired since early childhood. The death of his brother
and abuse inflicted by his Father have lead to PTSD. His
learning disabilities and mental disorders only seem to

exacerbate each other.  Although "Mental and emotional conditions are not ordinarily relevant in determining whether a particular sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.13, Snow's condition is exceptional and calls for a departure under this guideline as well.

### CONCLUSION

For the stated reasons herein, defendant Snow requests that the Court depart from the applicable guideline range.


Dated:  June 21, 2004

Respectfully Requested,
Anthony Snow
By his attorneys,

Frank Fernandez Esq.
Jeffrey Denner
Denner Associates P.C.
Four Longfellow Place, Suite 3501-06
Boston, MA 02214


### CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document was served this 21st day of June, 2004, via hand delivery to the Clerks Office of the United States District Court and by hand delivery to AUSA John Farley at the U.S. Attorney's Office and U.S.P.O. Sean Buckley.

Frank Fernandez