UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA )   )   | |
| v.                                                      )   | Cr. No. 03-10403-PBS |
|                                                            )   | |
| ANTHONY SNOW                          )   | |

**SUPPLEMENTAL SENTENCING MEMORANDUM**

Anthony Snow ("the defendant" or "Snow"), by and through undersigned counsel, hereby submits this supplement to the Sentencing Memorandum and Motion for Downward Departure filed June 23, 2004.

On January 27, 2004, the defendant waived indictment and pleaded guilty to a nine count information charging him with six counts of mail fraud in violation of 18 U.S.C. § 1341 and three counts of Wire Fraud in violation of 18 U.S.C. § 1343. This plea was prior to the Supreme Courts decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005). It is the defendant's contention that since he plead guilty under a pre-<u>Booker</u> mandatory guideline system, sentencing the defendant based upon a loss amount or enhancements not pleaded or proven beyond a reasonable doubt would violate the defendant's rights under the Fifth and Sixth Amendments.

In a Pre-Sentence Investigation Report ("PSR") submitted to the court, the United States Probation Office concluded that, in accordance with the United States Sentencing Guidelines, the defendant's total offense level would be twenty eight and his criminal history category was V. A total offense level of twenty eight coupled with a criminal history category of V would yield a presumptive guideline sentencing range of 130 to 162 months in prison. The

defendant does not agree with the Guideline calculation contained in the PSR. The defendant's objections to some of the enhancements included in this calculation and request for a downward departure are detailed both here and in the original Sentencing Memorandum. The PSR predates the recent decision of United States v. Booker, *Id.* where the United States Supreme Court held that the Sentencing Guidelines no longer impose a mandatory burden on the federal courts. Although district courts must consider the Guidelines as "guidelines" in their sentencing decisions, courts are no longer required to impose a sentence within the mechanistic strictures of the statutory grid. Rather, courts are free to consider a wide range of factors when deriving the appropriate sentence including the history and characteristics of the individual defendant. Id. at 770.

Here, several factors under 18 U.S.C. §3553(a) warrant a "statutory" sentence below the advisory Guideline range. The original Sentencing Memorandum and Motion for Departure detail the defendant's diminished capacity and includes an evaluation by Dr. Roger Gray which details the defendant's history of trauma, family abuse and hospitalization. The defendant has been diagnosed with Depressive Disorder, not otherwise specified, Posttraumatic Stress Disorder, Cocaine Abuse, and Learning Disorder Not Otherwise Specified. (See Report of Roger Gray, M.D., attached to original Memorandum as Exhibit A.) These conditions impaired his judgment at the time he committed this offense. Prior to Booker, the mandatory guidelines restricted courts to a narrow diminished capacity analysis in deciding whether to grant a downward departure. Now, under an advisory guidelines system, courts need not confine their analysis to a rigid set of factors. Rather, courts can employ the guidelines along with other "humanizing" factors to determine a sentence that is reasonable under the circumstances.

This Memorandum will detail pertinent facts and background, put forth a due process (ex post facto) argument based on the defendant having plead guilty pre-Booker, perform an analysis of additional factors under 18 U.S.C. §3553(a). (as well as the factors addressed in the first Sentencing Memorandum), and will finally address what the defendant believes to be the proper guideline range taking into consideration the defendant's objections to enhancements and requests for departure.

## FACTS AND BACKGROUND

The defendant's background is summarized in the PSR as well as the first Sentencing Memorandum, it will be only mentioned here when pertinent. He is a forty four year-old man who was the sixth of nine children. Born in New York City, the defendant grew up unable to read and struggling with a learning disability. He was physically and sexually abused by his father. As an adolescent the defendant began selling cocaine under the instruction of his father. His childhood was spent living between Sumter, S.C. and Boston, MA.. His mother was a loving figure in his life and the children grew up close with very little means. The defendant's psychological conditions were aggravated at the age of nine when while playing with his younger brother Bernard, age eight, he stood by helpless as Bernard suddenly stopped breathing and died. He still holds himself somehow responsible for his brother's death.

Despite his impairments, the defendant has fully acknowledged his guilt and accepted complete responsibility for his criminal behavior. Rather than contest these charges, the defendant fully cooperated from the outset sharing his involvement and what he knew of the scheme. His home address was used for making claims on auto accidents that were staged or

never took place at all.  This was done by the defendant or others renting cars or trucks and placing false insurance claims for damages based on these fraudulent accidents.  The defendant was one of many who took part in this scheme.  There were numerous claims in which his address was used although he played no role nor received any of the profits.  His share in the profits was no different from others involved in the claim nor was his role any larger than the others.  The defendant stands before the Court as the only person who appears to have been charged with this offense with at least one other accomplice, Marcia Thomas, cooperating and others apparently avoiding prosecution altogether.

## DUE PROCESS (*EX POST FACTO*) ARGUMENT

Although the Ex Post Facto Clause of the Constitution applies only to acts by the legislature and not the judiciary the Supreme Court has stated " that limitations on *ex post facto* judicial decision making are inherent in the notion of due process" *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001).  The *Rogers* Court went on to say

> if a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect.

*Rogers, 532* U.S. at 457(quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964))

These principles come into play here because the majority in *Booker* make it clear that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in a jury verdict or admitted by the defendant.'" *Booker*, 125 S. Ct at 749 (quoting *Blakely v. Washington*, 124 S. Ct. 2531, 2537 (2004).  Therefore, under the *mandatory* guideline system in effect until the Court's decision

in *Booker* the 'statutory maximum' sentence is the top of the guideline range based solely on facts admitted by Mr. Snow. *Booker* has since raised the 'statutory maximum' to the maximum allowed by statute by making the guidelines advisory. The question becomes does the *Booker* Court's interpretation of § 3553 meet the *Rogers* two-part test for non retroactivity by being (1) unexpected and (2) "indefensible by reference to the law which had been expressed prior to the conduct at issue." *Id.* at 457. The Court striking the mandatory aspect of the guidelines thereby raising the maximum sentence was unexpected. The Supreme Court in fact has stated the exact opposite construction in many cases. *See Stinson v. United States*, 508 U.S. 36, 42 (1993) (mentions "binding" nature of guidelines and cites prior cases). This new construction by the Court is also "indefensible by reference to the law which has been expressed prior to the conduct in issue", all of the Court's prior cases involving the statute held the guidelines to be mandatory. The Court did not rely on prior law in support of its removing § 3553(b)(1). Therefore prior to *Booker* the defendant was not on "notice" because at the time of his plea the guidelines were binding. *Booker* has now raised the statutory maximum sentence which should not be allowed by the Court by virtue of the Due Process Clause just as the legislature cannot do so retroactively due to the Ex Post Facto Clause. *See United States v. Marks*, 430 U.S. 188, 191-92 (1977). The applicable sentence, in compliance with the Sixth Amendment, that can be imposed on Mr. Snow should be based solely on his admission at plea. This analysis allowing the defendant to receive the benefits of *Booker's* sixth amendment ruling while avoiding the effects of its remedy ruling is based on a defendant not having to choose between constitutional rights. A person is entitled to have both their right to due process and Sixth Amendment rights respected. *See Marks*, 430 U.S. at 196-97 (holding Due Process Clause precludes applying

5

standards expanding criminal liability under *Miller v. California*, 413 U.S. 15 (1973), for an offense committed prior to when *Miller* was decided. Yet, "any constitutional principal enunciated in *Miller* which would serve to benefit petitioners must be applied in their case".) Thus the defendant has no mandatory sentencing "floor" but does have a mandatory "ceiling" which is the top of the guideline range reached only through his admitted facts. In Mr. Snow's case this guideline range would be reached by calculating his level based solely on the loss amount contained in the nine admitted counts. Placing him at an adjusted offense Level eleven, Criminal History Category V.

## **RELEVANT 18 U.S.C. § 3553(a) FACTORS**

If the Court were to sentence the defendant as if the construction in *Booker* is retroactive and does apply to him, under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a Court of the United States may receive and consider for the purpose imposing an appropriate sentence" (emphasis added). Courts are now free to tailor sentences in light of statutory concerns such as the history and circumstances of the defendant. Booker, 125 S. Ct. at 757 (citing 18 U.S.C. § 3553(a) (Supp. 2004)). Rather than adhere to a strict and impersonal arithmetical formula, a court must now derive a sentence that is reasonable given a host of factors including the defendant's record, the nature of the crime, and the facts and circumstances germane to each case. See Booker, 125 S. Ct. at 766-67.

Section 3553(a) requires a sentence to be "*sufficient, but not greater than necessary*" in complying with the four purposes of section 3553(a)(2): (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

6

(b) deterrence; (c) incapacitation ("to protect the public from further crimes"; and (d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

In determining the sentence that would be minimally sufficient to meet these factors the Court must consider several factors outlined in Section 3553(a): (1) the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the kinds of sentence available;" (3) the guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7).

Factors the Court should consider in determining an appropriate sentence in Mr. Snow's case are:

A. The enumerated loss attributable to Snow overstates his culpability in light of his role and financial benefit therefrom;

B. Others involved in the scheme that are similarly situated and arguably played a larger role in the scheme do not appear to have been prosecuted for their roles;

C. Snow cooperated with the Government from the outset and was denied the ability to effectively cooperate and obtain a substantial assistance departure for reasons outside of his control;

D. The historical circumstances of Snow's life suggest that a "statutory" departure is appropriate if not reflected by the Court in a downward departure as outlined in the original sentencing memorandum;

E. The defendant's criminal history category of V is overstated in the advisory

Guideline range and should be adjusted through a "statutory" departure to reflect the same.

### A. In Determining Snow's Sentence, the Court Should Give Less Weight to the Amount of Loss Under the Current Advisory System

Snow's exposure to prison here is almost entirely a function of the "Loss Table" under U.S.S.G. §2B1.1. Snow's base offense level is 6. As stated above, Snow's relevant conduct is his involvement with others in filing false insurance claims based on fraudulent car accidents. The government seeks, based on this "relevant conduct" and the "Loss Table" to increase his base offense by twelve levels. Snow was no more or less involved than others in this scheme. He did not receive a larger proportion of profits nor played a larger role than others. The Government relies on a cooperating participant Marcia Thomas who appears to paint Mr. Snow as playing a larger role. It is the defendant's contention that Mrs. Thomas' extensive criminal record and self serving motives do not make her a reliable source and call into question any relevant conduct based on her reports to the Government. The defendant in no way is attempting to excuse his conduct, but rather to place it in context to arrive at a just and fair sentence.

### B. In Determining Snow's Sentence, the Court Should Consider Sentencing Parity

Specifically, a goal of 18 U.S.C. § 3553(a)(6) is to avoid unwarranted sentencing disparity of similarly situated defendants. It is important to note that none of the others involved in this scheme appeared to have been indicted and it is unclear whether they were even held responsible by the Courts of the Commonwealth. It is respectfully suggested that

Snow's sentence should reflect the disparity between those involved in this case specifically as it appears to be the result of the Government's discretion as to whom to indict and who decided to cooperate first.

        **C.**      **In Determining Snow's Final Sentence, the Court Should Take Into Consideration Snow's Full Cooperation with the Government.**

Snow entered into a Proffer Agreement with the United States and agreed to provide truthful information as requested by the Government for the purpose of a potential downward departure pursuant to U.S.S.G. § 5K 1.1.

Snow met with representatives of the Government and provided details about his involvement as well as specifically describing how the criminal scheme was operated.

Notwithstanding Snow providing valuable information the Government, in its discretion, chose not to move for a downward, "substantial assistance" departure. Nevertheless, the Court should take into consideration Snow's cooperation and factor this into the sentence calculated under the post-<u>Booker</u> model. Even if it is viewed as repeated efforts to help law enforcement and a sign of his extraordinary acceptance of responsibility.

        **D.**      **In Determining Snow's Sentence, the Court Should Consider His Background**

The Court must take into account "the history and characteristics" of Snow. *See* 18 U.S.C. § 3553(a)(2)(B) & (C). In making this determination, Snow urges the Court to review the original memorandum detailing his family and mental history. His background is further detailed in ¶ 110-153 of the PSR. Dr. Roger Gray has interviewed the defendant again after

9

his competency evaluation conducted by the Government.  Dr. Gray has only become more convinced of his initial diagnoses.  The defendant acknowledged sexual abuse suffered at the hands of his Father.  This coupled with his learning disabilities and the trauma of watching his brother die at a young age led the defendant into a lifestyle of drug addiction and continuous psychological counseling.  While the defendant does not in any way seek to minimize his culpability for the offense conduct, his history and circumstances are pertinent to the derivation of a proper sentence.  See 18 U.S.C. § 3553(a).  Here, the defendant's history and circumstances no doubt contributed to his offense conduct.  Past abuse and dysfunction undoubtedly played a part in the dissolution of his first marriage and drug addiction.  Dr. Gray's report draws a causal link between these disorders and the defendant's addictions to drugs.  (See Report, attached as Exhibit A to original memorandum.)  Dr. Gray's report also draws a causal link between the disorders and the instant offense.  (Id.) Suffering from depression, the defendant's mental disorders no doubt affected his judgment during this critical time period.

Despite his earlier difficulties, the defendant has recognized his errors.  Seeking mental help for his previously undiagnosed conditions, the defendant intends not to repeat his mistakes.  The defendant exercised poor, albeit impaired judgment during an especially difficult time in his life.  While his personal demons do not excuse his conduct, they certainly provide a backdrop for assessing the proper sentence in this case.  Based on the defendant's personal circumstances along with the host of other 18 U.S.C. § 3553(a) factors, the court should make a "statutory" departure.

E.  **In Determining Snow's Sentence, the Court Should Consider That His Criminal History Category is Overstated**

The PSR concludes correctly under the guidelines that the defendant's criminal history category is V. This includes a conviction for falsifying a motor vehicle document, see PSR ¶ 94, which can be considered as part of this underlying scheme. Furthermore the criminal history points are enhanced two points for his being under a criminal justice sentence at the time of the instant offense, see PSR ¶ 100; and one point for committing the instant offense less than two years following release from custody, see PSR ¶ 101. The instant offense takes place between February 1998 through February 2003. It is unfair to enhance the defendant's criminal history level for being under a criminal sentence during the instant offense when the instant offense ranges over a five year period. The defendant committed all but one of these prior offenses related to these enhancements after the start of the "instant offense". While Application note one to USSG § 4A1.2(a) defines a prior sentence as one "imposed after the defendant's commencement of the instance offense but prior to the sentencing on the instant offense," a distinction exists between a sentence imposed after the commission of the instant offense and an offense committed after the commission of the instant offense. These criminal point enhancements would punish the defendant for an offense that he had not yet committed at the time of the instant offense. Punishing a defendant for future criminal conduct raises serious due process and possible *ex post facto* concerns. Moreover, such a punishment scheme runs antithetical to a guideline system that computes a defendant's criminal history. It defies logic to suggest that a defendant's criminal history could include crimes not yet committed at the time he engaged in the present criminal conduct. Accordingly, the court should not consider the three

criminal history point enhancements contained in ¶ 100-101 in the PSR, nor the one point related to the conviction for a false vehicle document (¶ 94). These four criminal history points if removed place him a Category IV rather than V. The determination of the proper criminal history category had greater importance under the pre-<u>Booker</u> mandatory sentencing regime. Under an advisory guidelines system, the court need not precisely determine the defendant's criminal history to arrive at an appropriate sentence. Rather, the defendant's past conduct is but one factor that the court can consider in its sentencing analysis.

## **GUIDELINE'S ANALYSIS**

The defendant disagrees with the advisory guideline level in the PSR. Specific objections to the enhancements for Aggravated role, see PSR ¶ 85, and Obstruction of Justice, see PSR ¶ 87 are contained in the original Sentencing Memorandum. The final PSR presented to the Court contains further enhancements suggested by the Government in its objections to the PSR, one is Sophisticated Means, see PSR ¶ 84A. The PSR applies this enhancement relying on application Note 6 of U.S.S.G. 2B1.1(b)(8)(c) referring to complex intricate offense conduct related to concealment of the offense. The fraudulent licenses, addresses and reports involved in the offense are credited for the length of the scheme, five years, therefore this enhancement is applied. The fraudulent activity is in fact the essence of the scheme, it is neither intricate nor meant for the purpose of concealing the scheme. The fraudulent activity is the scheme, the fact that it goes on for a five year period is not a reflection of intricacy or fraud to conceal. The defendant would request that the Court not enhance his guideline due to sophisticated means.

The defendant's advisory guideline calculation would differ from the PSR in that he

disagrees with:

    -¶ 84A- two points for sophisticated means

    -¶ 85- four points for leadership role (discussed in original sentencing memorandum)

    -¶ 87- two points for obstruction of justice (discussed in original sentencing memorandum)

    -¶ 89- zero points for acceptance of responsibility (due to obstruction of justice)

If these enhancements were removed from the calculation and three points were credited for acceptance of responsibility the total offense Level would be seventeen with a criminal history Category V. The defendant suggests the advisory Guideline range in this matter should be a total Level seventeen and Category V, with a range of punishment between 46-57 months.

<u>The Defendant's Diminished Capacity Constitutes Grounds for a Downward Departure</u>

This is detailed in the original sentencing memorandum but will be supplemented here. Under the formerly mandatory guidelines system, the courts had to justify downward departures from the rigidly established sentencing range. Courts had to find either that a departure ground fell within the bounds of a few narrowly delineated textual exceptions or that it fell outside the "heartland" of the typical guideline sentence. See <u>Koon v. United States</u>, 518 U.S. 81 (1996); United States Sentencing Guidelines Manual § 5K2.0. <u>Booker</u> renders the strict downward departure analysis moot. Clearly, if the guidelines are now advisory, then the court need not tailor its sentence to meet the strictures of chapter five departure grounds. Rather, the chapter five departure grounds are now merely reference tools for the court to consider in fashioning an appropriate sentence.

Although the question of whether a factor falls within the parameters of the downward departure model is no longer pertinent, a salient factor exists here that would have constituted legitimate grounds for a downward departure even in the pre-<u>Booker</u> regime.  Prior to <u>Booker</u>, a court could grant a downward departure if a case was atypical and a certain factor or factors removed it from the heartland of the specific offense guideline.  <u>United States v. Cooper</u>, 394 F.3d 172 (3rd Cir. 2005).  The defendant's case is one that would qualify as atypical even under the old mandatory guidelines system.

The court can justify a downward departure based upon the defendant's diminished capacity.  <u>See</u> United States Guidelines Manual § 5K2.13.  A downward departure based upon diminished capacity is appropriate when evidence exists that a defendant is less culpable because his actions were rooted in his psychological problems.  <u>See</u> <u>United States v. Shore</u>, 143 F. Supp.2d 74, 83 (D. Mass. 2001) (Gertner, J.) (granting a four-level downward departure based on diminished mental capacity in an Internal Revenue Service ("IRS") obstruction case).  Although the psychological problem must contribute to the defendant's decision to commit the offense, it need not be the "but for" cause of the offense.  <u>Id.</u> at 80.  It is well established that emotional abuse and psychological disorders can serve as a basis for a downward departure based upon so-called diminished capacity.  <u>See</u> <u>United States v. McBroom</u>, 124 F.3d 533, 540 (3rd Cir. 1997).

This case is replete with evidence of psychological disorders that affected the defendant's actions.  Dr. Gray reports that at the time he committed the instant offense, the defendant suffered from Depressive Disorder, not otherwise specified, Posttraumatic Stress Disorder, Cocaine Abuse, and Learning Disorder Not Otherwise Specified.  (<u>See</u> Report, attached to original memorandum as Exhibit A.)  Indeed, the defendant no doubt still suffers from these

14

disorders and has suffered from them in some form since childhood. Dr. Gray's report identified the link between the defendant's self-destructive behavior and his psychological disorders. (Id.) As the report indicates, the self-destructive behavior wrought by the disorders has permeated several aspects of the defendant's life from his marital relationships to his financial status. (Id.) During a time of intense personal and financial crisis, the disorder undoubtedly clouded the defendant's judgment. The defendant certainly does not ask the court to excuse his wrongful conduct; he asks only that the court consider the impact of these disorders on his life. Although Booker renders a downward departure request largely superfluous, the defendant nonetheless asks the court to grant his request for a downward departure.

## CONCLUSION

For the foregoing reasons, the court should sentence the defendant to a downward departure and/or "statutory" departure based on the mitigating factors detailed above.

Dated: March 24, 2005

        Respectfully submitted,
        Anthony Snow,
        By his attorney,

        `Frank Fernandez`
        Frank Fernandez
        Jeffrey Denner
        DENNER O'MALLEY, LLP
        Four Longfellow Place, 35th Floor
        Boston, MA 02114
        (617) 227-2800

<u>Affirmation of Service</u>

  I, Frank Fernandez, hereby certify that on March 25, 2005, I served a copy of the within Supplemental Sentencing Memorandum upon Assistant United States Attorney Emily Schulman by hand delivery and upon United States Probation Officer Sean Buckley, by hand delivery.

                             Frank Fernandez
                             Frank Fernandez